**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**RICO I. HAIRSTON,**

        **Plaintiff,**

    **v.**                        **Civil Action 2:18-cv-378
                                        Magistrate Judge Jolson**

**MRS. MARIA, et al.,**

        **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Grant Supplemental Complaint and Serve Defendants (Doc. 44), Defendants' Motion for Judgment on the Pleadings (Doc. 47), Defendants' Motion for a Stay of Discovery (Doc. 49), Plaintiff's Motion to Appoint Counsel (Doc. 50), and Plaintiff's Motion to Strike (Doc. 51). For the reasons that follow, Defendants' Motion for Judgment on the Pleadings (Doc. 47) is **GRANTED in part and DENIED in part**. Specifically, Defendants' Motion for Judgment on the Pleadings is denied with respect to (1) Plaintiff's deliberate indifference claim against Defendants Grimm, Hitch, and Maria and (2) Plaintiff's First Amendment retaliation claim against Defendant Tyler. Defendant's Motion for Judgment on the Pleadings is granted with respect to all other claims.

However, the Court **GRANTS** Plaintiff 30 days in which to file an Amended Complaint consistent with this Opinion and Order. Plaintiff's Amended Complaint should address the following claims only:

- His deliberate indifference claim against Defendants Grimm, Hitch, and Maria, *see infra* at 7–10;

- His conditions-of-confinement claim against Defendant Brown, Defendant John Doe,

Defendant Grimm, Defendant Maria, and Defendant Hitch, *see infra* at 10–14;

- His Fourteenth Amendment Due Process claim based on his confinement in administrative segregation, *see infra* at 15–16; and

- His First Amendment retaliation claim against Defendant Tyler, *see infra* at 18–21.

Plaintiff's Motion to Grant Supplemental Complaint and Serve Defendants (Doc. 44) and Motion to Strike (Doc. 51) are **DENIED**.  Plaintiff's Motion to Appoint Counsel (Doc. 50) is **DENIED without prejudice**.  Defendants' Motion to Stay Discovery (Doc. 49) is **DENIED as moot**.

## I.    BACKGROUND

Plaintiff is an inmate proceeding *pro se* against the following Defendants:  Lieutenant Tyler, Lieutenant Shasteen, Correctional Officers Eyre, Grimm, and Hitch, Nurse Maria, Mental Health Supervisor Brown, and Sergeant John Doe.  (*See generally* Doc. 8).  Plaintiff's complaint raises a several (perhaps unrelated) claims and is difficult to follow, particularly with respect to the timing of the alleged incidents.

At the time Plaintiff filed his Complaint, he was housed at the Correctional Reception Center.  (*Id.* at 1).  On February 28, 2018, Plaintiff alleges that he was placed in "the hole under investigation for undisclosed reasons."  (*Id*. at 9).  He asserts that, on that day, correctional officers informed other inmates of his location, so they could verbally harass him because he was convicted of a sex crime.  (*Id*. at 9).  Plaintiff alleges that "for 3 days[,] inmates on this unit [were] yelling out their doors calling [him] a 'f***ing chomo' 'baby rapist' 'toucher'" and telling him he was going to be "touched" and that his sister or daughter would be raped.  (*Id*. at 9).  Plaintiff also claims that the inmates threatened to hack his J-Pay account and "harass [his] family and let [him] know they are going to have [him] 'touched' by sending out an S.O.S. (stab on sight) to every prison in Ohio."  (*Id*. at 10).

Plaintiff later alleges that he received a ticket on March 5, 2018, and went before the Serious Misconduct Panel on March 12, 2018, which resulted in continuous housing in "the hole." (*Id*. at 12). He asserts that Lieutenant Tyler told him to "get comfortable," because he would be in the hole for years. (*Id*.).

Plaintiff alleges that, at some point, he requested to be on suicide watch and submitted informal complaints asking to be separated from the harassing inmates. (*Id*. at 10). Plaintiff's cell location was changed first to Cell 2112, and then to Cell 2104. (*Id*.). Plaintiff states that Cell 2104 had no working sink, and that his complaints about it were disregarded. (*Id*.). Plaintiff contends that the harassment continue, with fellow inmates telling him "your sister sent us stamps on J-Pay and pictures, we told her we was in here for murder and that we was going to get you touched. I told that b***h to send us pictures then I cussed that b***h out." (*Id*.). Plaintiff again asked for suicide watch, filed an informal complaint, and requested that he be separated from the harassing inmates. (*Id*. at 11).

Plaintiff alleges that, on March 20, 2018 at approximately 2:30 p.m., he was placed in Cell 1210, which "was covered in black mold, feces, urine, and asbestos" on "the sink walls, and the entire ceiling." (*Id*. at 3; *see also id*. at 11). Plaintiff contends that he complained to the prison staff, including Defendants, but his plea fell on deaf ears. (*Id*. at 3).

Beginning at approximately 9:00 p.m., Plaintiff threatened repeatedly that, if he was not removed from the cell, he was going to take his own life. (*Id*.). Plaintiff alleges that the prison staff ignored his pleas. (*Id*.). More specifically, Plaintiff avers:

> I tell Correctional Officer Mr. Grimm "I'm going to kill myself." He says, "okay," then walks away. He never reports this to anyone nor does he contact medical, or his supervisor.

> Time goes by, I'd say about an hour and fifteen minutes by this time it's 3rd shift; about 10:15 p.m. and Correctional Officer Mr. Hitch comes past my cell, and as he

approaches my cell, I tell him, "Look, I'm going to kill myself, take me out of this cell." I ask him did 2nd shift tell him, and he says "No." He then says, "Okay, hold on," and leaves to report this to Nurse Maria.

> Nurse Maria approached my cell, and as I begin to tell her I'm going to commit suicide … she cuts me off and states, "I don't give a shit, go ahead and do it, they come thru every 20 minutes, your [sic] on a suicide floor, we'll deal with it when it happens." Then she walks away, comes back about one minute later and says something else but I start to yell for the Correctional Officer Mr. Hitch and scream[ ] for help.

(*Id*. at 3–4).

Plaintiff then describes the actions he took in an effort to take his own life:

> I then put toilet paper on my window and start planning a way to hang myself with my towel. Correctional Officer Mr. Hitch walks up to my cell door, starts to bang on the door and then pops the food trap slot open. He then states, "This is the easiest way to get sprayed, just wait until a 'white shirt' walks around."

> I then proceed to rip my towel, start making a nosse [sic], rig it in the vent above the door and hang myself!

(*Id*. at 4).

Plaintiff does not explain how he survived, but he reiterates that the prison staff ignored him:

> The Correctional Officer Mr. Hitch walked past my cell door every 30 minutes and just looks at me and keeps walking as I'm hanging, choking to death. I had ripped my towel, made a nosse [sic] and was attempting to "go ahead and do it" as Nurse Maria advised me, and Correctional Officer Mr. Hitch just kept walking past my cell door with deliberate indifference, dereliction of duty, and malice.

(*Id*.). Based on these allegations, Plaintiff contends that Defendants were deliberately indifferent to his serious medical needs. (*Id*.).

Plaintiff asserts that he filed an informal complaint on March 23, 2018, but it was not resolved to his satisfaction. (*Id*. at 5). Plaintiff then filed a second grievance reasserting the same facts and requesting that prison officials check the audio recording. (*Id*.). This grievance likewise was not resolved to Plaintiff's satisfaction, prompting him to file this lawsuit on April 24, 2018.

(*Id.*).

Plaintiff submitted health services requests before he filed suit, on March 24 and 26, 2018, complaining of dizzy spells, migraines, and coughing up blood. (*Id.*). Plaintiff was examined on March 27, 2018, but he nonetheless maintains that Defendants demonstrated deliberate indifference to his medical needs and that he was subjected to unsafe conditions. (*Id.*).

Plaintiff also complains that he was denied the right to make a legal call at the beginning of April 2018. (*Id.* at 11). He alleges that, on April 4, 2018, he received a false conduct report from Lieutenant Tyler "where he lies and says I called him a 'b***h ni**a' and told him 'I was going to spit in his face' and that 'the flood gates are open.'" (*Id.*). Plaintiff had a Rules Infraction Board hearing the same day. (*Id.*).

Plaintiff states that, during the hearing, he denied making the statements and called a fellow inmate as a witness. (*Id.*). He also claims that Lieutenant Tyler snuck into the Rules Infraction Board room, despite regulations stating that he should not be included in deliberations. (*Id.* at 5, 13). Plaintiff continues:

> [w]hen I was called back into the RIB room, Lieutenant Shasteen states, "because you didn't allow Lieutenant Tyler to be present, we are going to have to find you guilty. . . ." I then ask him, "did Lieutenant Tyler just come in here?" He says . . . "well . . . yeah . . . , theres [sic] two cameras right there . . . one, two, this is his office, I can't stop him from coming in here.

(*Id.* at 5) (alterations in original). Plaintiff claims that he was improperly given a 30-day phone and J-Pay restriction, his mail is not being sent out, and he is being denied legal assistance because Lieutenant Tyler seeks to "cut all [his] communication off from the outside world. . . ." (*Id.* at 12).

Based upon all of those allegations, Plaintiff sets forth the following as his legal claims:

> The harassment, retaliation, deliberate indifference, discrimination, racial slurs, denial of access to the court, [and] due process violations, constituted cruel and unusual punishment and violated Plaintiff['s] 1st Amendment, 8th Amendment, and 14th Amendment rights to the … United States Constitution.

(*Id*. at 13).

## II. MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. 47)

### A. Standard of Review

The Federal Rules of Civil Procedure provide that, "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment may be granted under Rule 12(c) where the moving parties clearly establish that no material issue of fact remains to be resolved and that they are entitled to judgment as a matter of law." *Williamson v. Recovery Ltd. P'ship*, No. 2:06-CV-292, 2010 WL 3769136, at *2 (S.D. Ohio Sept. 24, 2010) (citations omitted).

In examining a motion for judgment on the pleadings under Rule 12(c), the Court uses the same standard of review applied to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Mixon v. State of Ohio*, 193 F.3d 389, 399–400 (6th Cir. 1999). Accordingly, the Court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Tech., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). To survive a motion for judgment on the pleadings, the "complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop*, 520 F.3d at 519 (internal quotation marks omitted). Consequently, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**B.    Analysis**

Although his Complaint is difficult to follow, Plaintiff appears to bring the following claims: (1) deliberate indifference to serious medical needs in violation of the Eighth Amendment, (2) inhumane conditions of confinement in violation of the Eighth Amendment, (3) failure to protect in violation of the Eighth Amendment; (4) a Due Process claim based on his confinement to administrative segregation, (5) a Due Process claim based on certain Defendants filing a false misconduct report against him and failing to abide by state regulations when conducting a hearing on that report, (6) denial of access to the courts in violation of the First Amendment, (7) a First Amendment retaliation claim, and (8) verbal harassment.  The Court addresses each of these in turn.

*1.   Eighth Amendment - Deliberate Indifference to Serious Medical Needs*

Plaintiff maintains that Defendants were deliberately indifferent to his serious medical needs when his threats of suicide were ignored, resulting in suicide attempt.  (Doc. 8 at 3–5). According to Plaintiff, after being placed in an unsanitary cell, he informed Defendants Grimm, Hitch, and Maria of his intent to commit suicide.  (*Id.*). These Defendants either ignored his suicidal ideation, or, in the case of Defendant Maria, actively encouraged him to commit suicide. (*Id.*).   Defendant Hitch allegedly walked by Plaintiff's cell multiple times while Plaintiff was attempting to commit suicide and did not intervene.  (*Id.*).

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation and quotation marks omitted).  An inmate can bring suit under 42 U.S.C. § 1983 for an Eighth Amendment violation "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying

or delaying access to medical care or intentionally interfering with the treatment once prescribed."

*Id.* 104–05.

Such a claim has an objective and a subjective component. *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004). As the Sixth Circuit recently explained:

> The objective component requires that the inmate have a sufficiently serious medical need such that she is incarcerated under conditions posing a substantial risk of serious harm. A medical need is sufficiently serious if it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.
>
> To satisfy the subjective component, a plaintiff must show that officials had a sufficiently culpable state of mind, namely deliberate indifference to inmate health or safety. Deliberate indifference is greater than negligence but does not require proof that the officials intended to cause harm. Acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk. The plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.

*North v. Cuyahoga Cty.*, No. 17-3964, — F. App'x —, 2018 WL 5794472, at *3 (6th Cir. Nov. 5, 2018) (internal citations, quotation marks, and alterations omitted).

According to Defendants, in this case, the Court does "not need to look at the objective or subjective components of an Eighth Amendment claim." (Doc. 47 at 10). Instead, they emphasize that "Plaintiff has not claimed that he suffered any pain or injury as a result of Defendants [sic] actions." (*Id.*). Absent allegations of pain or injury, Defendants insist Plaintiff's claim fails. (*Id.* at 10–11).

While it is true that prisoners may not bring claims "for mental or emotional injury suffered while in custody without a prior showing of physical injury," 42 U.S.C. § 1997e(e), Plaintiff does, in fact, allege that he suffered physical injury as a result of Defendants' deliberate indifference to his serious medical needs. (*See* Doc. 8 at 3–4). After correctional staff ignored his repeated statements that he was going to kill himself, Plaintiff alleges that he hung himself with a towel, resulting in him nearly "choking to death." (*Id.*). Several days later, Plaintiff reported

experiencing dizzy spells, migraines, and coughing up blood.  (*Id.* at 5).    Construing the Complaint in a light most favorable to Plaintiff, the Court can infer that Plaintiff suffered more than a *de minimis* physical injury as a result of allegedly hanging himself and nearly "choking to death."  *See Arauz v. Bell*, 307 F. App'x 923, 929 (6th Cir. 2009) ("Reading Arauz's pleadings liberally, we conclude that Arauz's statements that he attempted to commit suicide satisfy this requirement. By definition, attempting suicide involves hurting oneself, and we can presume the existence of some physical injury from Arauz's statement that he attempted to commit suicide."); *see also Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012) ("In suicide cases, the objective element 'is met by virtue of the suicide itself, as it goes without saying that suicide is a serious harm.'" (quoting *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006)).

Defendants maintain that Plaintiff cannot proceed with his deliberate indifference claim because he has failed to corroborate his allegations with "verifying medical evidence."  (Doc. 47 at 10–11).  This misstates the law in two important ways.  First, this requirement applies at the summary judgment stage, not to a motion for judgment on the pleadings.  *See* Fed. R. Civ. P. 12(c); *see also Stevens v. Hutchinson*, No. 1:13-CV-918, 2017 WL 9605115, at *11–12 (W.D. Mich. Dec. 6, 2017), *report and recommendation adopted as modified*, No. 1:13-CV-918, 2018 WL 1557251 (W.D. Mich. Mar. 30, 2018), *appeal dismissed*, No. 18-1536, 2018 WL 3825418 (6th Cir. June 1, 2018) ("Defendants' reliance on the Sixth Circuit's decision in *Napier v. Madison County* is misplaced in the Rule 12(b)(6) context. In response to a motion for *summary judgment*, a plaintiff claiming that delay in receiving medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed. The MDOC defendants have not identified any case where the Sixth

Circuit has extended the 'verifying medical evidence' requirement to a challenge to the adequacy of a pleading under Rule 12(b)(6)."). Therefore, it is not relevant at this stage of proceedings.

Second, this requirement applies only in specific circumstances not at issue here. "If the plaintiff's [deliberate indifference] claim . . . is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious, the plaintiff must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citation and internal quotation marks omitted). But "[w]here a plaintiff's claims arise from an injury or illness so obvious that even a lay person would easily recognize the necessity for a doctor's attention, the plaintiff need not present verifying medical evidence of serious medical need." *Blackmore*, 390 F.3d at 899. As alleged by Plaintiff, his attempted suicide by hanging and the resulting injuries were sufficiently obvious that even a lay person would have recognized the need for medical attention. (*See* Doc. 8 at 3–5). Defendants' argument on this point is therefore not persuasive.

In view of the foregoing, Defendants' Motion for Judgment on the Pleadings is **DENIED** with respect to Plaintiff's deliberate indifference claim. Plaintiff may proceed with his deliberate indifference claim against Defendants Grimm, Hitch, and Maria.

### 2. *Eighth Amendment - Conditions of Confinement*

Plaintiff alleges that the conditions of confinement in three different cells—Cell 1210, Cell 2104, and a corner cell on "TPU North"—violated his Eighth Amendment right to be free from cruel and unusual punishment. (*See* Doc. 8 at 3–4 (describing conditions in Cell 1210); *id.* at 10 (describing conditions in Cell 2104); and *id.* at 11 (describing conditions in the corner cell on "TPU North")). It is unclear from the Complaint whether Cell 1210 is the same cell as the corner

cell on "TPU North."  The Court treats them as separate for purposes of this analysis, but the result would be the same regardless.

In mid-March 2018, Plaintiff was allegedly placed in Cell 2104 in which there was "a toilet attach[ed] to a sink where the sink did not work at all[.]"  (*Id.* at 10).  On March 20, 2018, Plaintiff was allegedly confined to cell 1210, which "was covered in black mold, feces, urine, and asbestos" on "the sink walls, and the entire ceiling."  (Doc. 8 at 3).  As a result of his exposure to those conditions and Defendants' alleged refusal to remedy them, Plaintiff attempted to commit suicide, hanging himself and nearly choking to death.  (*Id.* at 3–4).  Several days later, Plaintiff reported experiencing dizzy spells, migraines, and coughing up blood.  (*Id.* at 5).  Finally, at some subsequent point, Plaintiff was "placed back on 'TPU North'" in a corner cell filled with asbestos and black mold."  (*Id.* at 11).  Plaintiff requested to be moved from that cell, and his request was granted."  (*Id.*).

"The Eighth Amendment protects inmates by imposing duties on prison officials, who must provide humane conditions of confinement and adequate food, clothing, shelter, and medical care and take reasonable measures to guarantee the safety of the inmates."  *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 568 (6th Cir. 2013) (citation, alterations, and internal quotation marks omitted).  "To state a claim for violation of the Eighth Amendment arising from conditions of confinement, a prisoner must plead (1) that 'the failure to protect from risk of harm [was] objectively sufficiently serious,' and (2) that 'the official acted with deliberate indifference to inmate health or safety.'"  *Taylor v. Larson*, 505 F. App'x 475, 477 (6th Cir. 2012) (quoting *Mingus v. Butler,* 591 F.3d 474, 480 (6th Cir. 2010)).

"Conditions-of-confinement cases are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount."  *Lamb v. Howe*, 677 F. App'x 204,

209–10 (6th Cir. 2017) (citing *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001)).  As the Supreme Court has recognized, "[a] filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978).

Ultimately, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Powell v. Washington*, 720 F. App'x 222, 228 (6th Cir. 2017) (quoting *Ivey v. Wilson,* 832 F.2d 950, 954 (6th Cir. 1987)).  Meritorious conditions-of-confinement claims therefore require a showing that a plaintiff was "deprived 'of the minimal civilized measure of life's necessities.'" *Harden–Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Plaintiff's allegations regarding the conditions in Cell 2104 and the corner cell on "TPU North" fail to state a claim upon which relief can be granted.  To establish a claim for damages under the Eighth Amendment, a plaintiff must allege some type of physical injury.  *See Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) ("[E]ven though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward.").  Plaintiff does not allege that he suffered physical injury as a result of the conditions in Cell 2104 and the corner cell on "TPU North."  As a result, his claim fails with respect to those conditions.

A more difficult question is whether Plaintiff has stated a claim for relief based on his allegations concerning the conditions in Cell 1210.  Plaintiff alleges that he was placed in Cell 1210, which "was covered in black mold, feces, urine, and asbestos" on "the sink walls, and the entire ceiling."  (Doc. 8 at 3).  Defendants allegedly refused to remedy these conditions, and Plaintiff subsequently attempted suicide, resulting in a variety of physical injuries.  (*Id.* at 3–5).

Defendants offer two arguments in support of their position that these allegations fail to state a claim for relief. First, they contend, Plaintiff did not allege that he suffered any physical injury from his exposure to the conditions in Cell 1210. (Doc. 47 at 7). But the Complaint alleges that Plaintiff attempted suicide in response to his exposure to the conditions in Cell 1210. Attempted suicide is a physical injury that satisfies the Prison Litigation Reform Act's physical injury requirement. *See supra* at 8–9 (citing *Arauz*, 307 F. App'x at 929; *Rosario*, 670 F.3d at 821); *see also Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015) (concluding that inmate's conditions-of-confinement claim satisfied the physical injury required because he "plainly alleged that his mental-health problems and attempted suicide followed the campaign of retaliation of which the unsanitary conditions of his confinement were a prominent part").

Second, Defendants contend that Plaintiff's exposure to the conditions in Cell 1210 was temporary at most, arguing that Plaintiff "stated in his complaint that upon complaining about these conditions, he was moved to another cell." (Doc. 47 at 6). They do not cite any portion of the Complaint in support of this statement, and the Court has been unable to locate any such admission in the Complaint. According to Plaintiff, in response to an informal complaint, correctional staff, not Plaintiff, asserted that he had been moved after complaining of the conditions in Cell 1210. (Doc. 8 at 5).

The fundamental problem with the Complaint is the lack of allegations concerning Plaintiff's length of exposure to unfit conditions in Cell 1210. Sixth Circuit cases illustrate the importance that length of exposure to those conditions plays in determining whether the Eighth Amendment has been violated. *Compare Taylor*, 505 F. App'x. at 477 (finding that a prisoner who alleged that he was placed in a cell covered in fecal matter and forced to remain there for three days sufficiently stated a claim under the Eighth Amendment) *with Lamb*, 677 F. App'x at

209 (finding that plaintiff's four-hour period of exposure to human waste was a "temporary inconvenience that, while serious, did not last so long as to create conditions that fall below 'the minimal civilized measure of life's necessities as measured by a contemporary standard of decency.'" (citation omitted)).  Because the Complaint lacks direct or inferential allegations that would allow the Court to conclude that Plaintiff's Eighth Amendment rights were violated, Defendants' Motion for Judgment on the Pleadings is **GRANTED** with respect to Plaintiff's conditions-of-confinement claim.  However, Plaintiff is **GRANTED** 30 days in which to file an Amended Complaint with respect to (1) the length of time he was exposed to the conditions in Cell 1210 and (2) any injury he suffered as a result of his exposure to those conditions.

### 3. *Eighth Amendment - Failure to Protect*

Plaintiff appears to allege that Defendants failed to protect him from verbal harassment and threats from other inmates.  (*See* Doc. 8 at 9–10).  Under the Eighth Amendment, inmates have a constitutional right to personal safety.  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  Correctional officials therefore have an obligation "to take reasonable measures to guarantee the safety of the inmates" in their custody. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984).  In order to establish a constitutional violation for failure to protect, a prison inmate must show that: (1) "the failure to protect from risk of harm is objectively sufficiently serious"; and (2) that "prison officials acted with deliberate indifference to inmate health or safety."  *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011).

Because Plaintiff has not alleged that he suffered any physical injury as a result of Defendants' alleged failure to protect him, he has failed to state a claim upon which relief may be granted.  *See Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) ("[E]ven though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de*

*minimis* for an Eighth Amendment claim to go forward."). Therefore, Defendants' Motion for Judgment on the Pleadings is **GRANTED** with respect to Plaintiff's failure-to-protect claim.

### 4. Due Process – Administrative Segregation

Plaintiff alleges that his Due Process rights were violated as a result of him being confined to administrative segregation since February 28, 2018. (Doc. 8 at 1; *id.* at 12). Absent "atypical and significant hardship," confinement in administrative segregation does not implicate liberty interests protected by the Due Process clause. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "Generally courts will consider the nature and duration of a stay in segregation in determining whether it imposes an 'atypical and significant hardship.'" *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (quoting *Harden–Bey*, 524 F.3d at 793).

Here, Plaintiff has purportedly been in administrative segregation for nine to ten months. (Doc. 8 at 1). By itself, this duration of confinement is not an "atypical or significant hardship." *See Powell v. Washington*, 720 F. App'x 222, 226 (6th Cir. 2017) (holding that six months in administrative segregation does not constitute an "atypical and significant" hardship implicating inmate's due process rights); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) (concluding that more than a year in administrative segregation did not implicate inmate's due process rights); *Dawson v. Norwood*, No. 1:06-CV-914, 2008 WL 7866181, at *6 (W.D. Mich. Sept. 16, 2008), report and recommendation adopted, No. 1:06-CV-914, 2010 WL 2232355 (W.D. Mich. June 1, 2010) ("Plaintiff was held in administrative segregation for approximately nine months. Administrative segregation of this limited duration is not an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." (citation and internal quotation marks omitted)); *cf. Harden–Bey*, 524 F.3d at 793 (holding that three years in administrative segregation potentially created a protected liberty interest).

Further, the Complaint contains limited allegations regarding the nature of Plaintiff's confinement to administrative segregation. (*See* Doc. 8 at 1; *id.* at 12). Indeed, nothing in the Complaint suggests that the nature of his confinement in administrative segregation is inconsistent with "the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. As a result, Plaintiff has not alleged that his confinement to administrative segregation constituted an "atypical and significant" hardship, and his Due Process claim therefore fails as a matter of law. Defendants' Motion for Judgment on the Pleadings is **GRANTED** with respect to this claim. However, Plaintiff is **GRANTED** 30 days in which to file an Amended Complaint with respect to (1) whether he remains confined in administrative segregation, (2) the official responsible for his placement in administrative segregation; (3) the nature of his confinement in administrative segregation (e.g., loss of privileges), and (4) any allegations supporting his contention that he will be confined in administrative segregation "for years," (Doc. 8 at 12).

### 5. *Due Process – Disciplinary Proceedings*

Plaintiff appears to allege that certain Defendants violated his Due Process rights by filing a false misconduct report against him and failing to abide by state regulations when conducting a hearing on that report. (Doc. 8 at 11–12). The Sixth Circuit has made clear that allegations like this are insufficient to state a claim upon which relief may be granted. "[A] prisoner has no constitutional right to be free from false accusations of misconduct." *Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). *See also Martin v. Zariwala*, No. 2:18-CV-270, 2018 WL 2725434, at *3 (S.D. Ohio June 6, 2018), *report and recommendation adopted*, No. 2:18-CV-270, 2018 WL 4804663 (S.D. Ohio Oct. 4, 2018) (collecting district court cases in the Sixth Circuit holding the same). Further, with respect to Plaintiff's allegations that Defendants failed to follow state regulations when conducting his

disciplinary hearing, the Sixth Circuit has held that "[t]he state simply has no 'federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable.'" *Jackson*, 61 F. App'x at 132 (quoting *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993)). *See also Grinter v. Knight*, 532 F.3d 567, 574 (6th Cir. 2008) (addressing failure to follow established procedures for prison disciplinary hearing and holding that "[f]ailing to follow proper procedures is insufficient to establish an infringement of a liberty interest." (citing *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983))). Therefore, Defendants' Motion for Judgment on the Pleadings is **GRANTED** with respect to this claim.

### 6. First Amendment – Denial of Access to Courts

Plaintiff alleges that Defendant Tyler denied him access to the courts. (Doc. 8 at 11–12). Defendant Tyler purportedly disallowed Plaintiff from making a legal call on one occasion and subsequently "cut all [Plaintiff's] communications off from . . . the courts." (*Id.*). "Prison officials may not erect any barriers that impede an inmate's access to the courts." *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). "In order to state a claim for interference with access to the courts, however, a plaintiff must show actual injury." *Harbin-Bey*, 420 F.3d at 578 (citing *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578 (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)).

Here, Plaintiff has not alleged that he suffered an actual injury as a result of Defendants' alleged interference with his access to the courts. (*See* Doc. 8 at 11–12). His First Amendment claim fails as a result. *See Harbin-Bey*, 420 F.3d at 578 (citing *Thaddeus–X*, 175 F.3d at 394).

Defendants' Motion for Judgment on the Pleadings with respect to Plaintiff's allegations of being denied access to the courts is therefore **GRANTED**.

### 7. First Amendment – Retaliation

Plaintiff alleges that he filed a complaint alleging that Defendant Tyler, among others, was harassing him, and that, in response, Defendant Tyler retaliated against him by filing a false conduct report against Plaintiff and "cut[ting] all [Plaintiff's] communication off from the outside world, [his] family, [and] the courts." (Doc. 8 at 11–12).

"Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution." *Harbin-Bey*, 420 F.3d at 579 (citing *Thaddeus–X*, 175 F.3d at 394).

> In order to establish a First Amendment retaliation claim, a plaintiff must prove that: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Harbin-Bey*, 420 F.3d at 579 (citation and internal quotation marks omitted).

Plaintiff's allegations satisfy the first element of a First Amendment retaliation claim. The filing of non-frivolous grievances, like the grievance Plaintiff allegedly filed against Defendant Tyler, is protected conduct under the First Amendment. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)).

Plaintiff has also satisfied the second element of a First Amendment retaliation claim. "An adverse action is one that is '*capable* of deterring a person of ordinary firmness' from exercising the constitutional right in question." *Hill*, 630 F.3d at 472 (quoting *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002)). "*Actual* deterrence need not be shown." *Harbin–Bey*, 420 F.3d at 579 (citation omitted). This standard "is not an overly difficult one for the plaintiff to meet," *Hill*, 630

F.3d at 472, and "is intended to weed out only inconsequential actions," *Thaddeus–X*, 175 F.3d at 398.

Here, Plaintiff alleges that in response to his filing of an informal complaint against Defendant Tyler and others, Defendant Tyler retaliated by filing a false conduct report against him and "cut all [his] communication off from the outside world, [his] family, [and] the courts." (Doc. 8 at 11–12). Charging an inmate with serious misconduct is sufficiently adverse to deter a person of ordinary firmness from engaging in protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) ("Thomas claims that Eby's issuing him the sexual-misconduct ticket constitutes an adverse action. Because inmates convicted of major-misconduct charges lose their ability to accumulate disciplinary credits for that month, inmates of ordinary firmness would be more reluctant to engage in protected conduct that may lead to the retaliatory issuance of misconduct tickets."); *Catanzaro v. Michigan Dep't of Corr.*, No. 1:09 CV 2, 2011 WL 7113245, at *10 (W.D. Mich. Dec. 16, 2011), *report and recommendation adopted*, No. 1:09-CV-2, 2012 WL 271335 (W.D. Mich. Jan. 30, 2012) ("As courts recognize, charging a prisoner with a misconduct violation is not an inconsequential action." (collecting cases)). That is particularly true in this case where the misconduct charge was allegedly combined with a loss of privileges. *See Hill*, 630 F.3d at 475 ("Being threatened with a transfer to a more restrictive living environment with fewer privileges would deter a person of ordinary firmness from exercising the constitutional right to file grievances.").

The third element is a closer call. Plaintiff's allegations must demonstrate "that the adverse action was motivated at least in part by the prisoner's protected conduct." *Id.* Temporal proximity between the protected conduct and the adverse action is one approach to establish the required causal connection. *See id.* at 476 (citing *Thaddeus–X*, 175 F.3d at 399).

However, Sixth Circuit precedent is less than clear as to whether, at the motion to dismiss stage, temporal proximity *alone* is sufficient to establish the required causal connection. *Compare id.* ("Although this court has concluded that evidence of temporal proximity between filing grievances and the adverse action provides some support for establishing retaliatory motive, it has been reluctant to find that such evidence alone establishes retaliatory motive." (citing *Holzemer v. City of Memphis*, 621 F.3d 512, 525–26, (6th Cir. 2010))) *and Skinner v. Bolden*, 89 F. App'x 579, 579–80 (6th Cir. 2004) ("[C]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." (citation omitted)) *with Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 632 (6th Cir. 2013) ("[A]lthough temporal proximity may not be enough to ultimately sustain Plaintiffs' allegations, it is sufficient at [the motion to dismiss] stage to render Plaintiffs' claims plausible. As we recently noted in reversing the grant of a motion to dismiss in a § 1983 action, '[t]emporal proximity between the protected conduct and the adverse action by the state actor alone may be significant enough to constitute indirect evidence . . . to create an inference of retaliatory motive.'" (quoting *Paige v. Coyner*, 614 F.3d 273, 283 (6th Cir. 2010))).

The Court finds that, at this stage of the case, Plaintiff has pled sufficient allegations to satisfy the third element of a First Amendment retaliation claim. Two principles support this conclusion. First, the Sixth Circuit has emphasized that "[a] defendant's motivation for taking action against the plaintiff is usually a matter best suited for the jury." *Paige*, 614 F.3d at 282 (citing *Harris v. Bornhorst*, 513 F.3d 503, 519–20 (6th Cir. 2008)). Second, at the motion to dismiss stage, in a published decision, the Sixth Circuit has recognized that "temporal proximity between the protected conduct and the adverse action by the state actor '*alone* may be significant enough to constitute indirect evidence . . . to create an inference of retaliatory motive.'" *Paige*, 614 F.3d at 282 (quoting *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004)) (emphasis

added).  Here, Plaintiff has alleged that Defendant Tyler retaliated against him approximately two weeks after he filed his complaint regarding Defendant Tyler.  (Doc. 8 at 11).  "[A]lthough temporal proximity may not be enough to ultimately sustain Plaintiff['s] allegations, it is sufficient at this stage to render [his] claims plausible."  *Top Flight Entm't*, 729 F.3d at 632.  Therefore, Defendants' Motion for Judgment on the Pleadings is **DENIED** with respect to Plaintiff's First Amendment retaliation claim.  Plaintiff may proceed with that claim against Defendant Tyler.

### 8.  *Verbal Harassment*

Throughout his Complaint, Plaintiff alleges that correctional staff subjected him to verbal harassment and threats.  (*See generally* Doc. 8).  While this behavior, if true, is indeed reprehensible, it is well-settled that "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief."  *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x. 453, 455 (6th Cir. 2012) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)).  As a result, Plaintiff has failed to state a claim related to these allegations.  Therefore, Defendants' Motion for Judgment on the Pleadings is **GRANTED** with respect to Plaintiff's claim that Defendants verbally harassed and threatened him.

## III.  MOTION TO GRANT SUPPLEMENTAL COMPLAINT AND SERVE DEFENDANTS (Doc. 44)

Plaintiff requests that the Court grant him permission to file a supplemental complaint with a new claim against a new defendant.  (Doc. 44 at 1–2).  He also requests that the Court serve certain Defendants identified in the Complaint who have not yet been served.  (*Id.* at 2).

As the Court observed in its July 31, 2018 Opinion and Order (Doc 42), "Plaintiff's proposed supplemental complaints appear to have little or no relation to the claims raised in the original complaint."  (*Id.* at 10 (citing *Dyess v. Mullins*, No. 1:16-cv-910, 2017 WL 2828642, at *3 (S.D. Ohio Sept. 1, 2017) (denying Plaintiff's motion to amend to add claims relating to an entirely

separate incident and involving three new Defendants))).  For the same reason, Plaintiff's Motion

to Grant Supplemental Complaint (Doc. 44) is **DENIED**.  To the extent that Plaintiff has requested

that this Court issue summons and that the proposed supplemental complaints be served, that

request is **DENIED** for the same reason.

## IV.        MOTION FOR A STAY OF DISCOVERY (Doc. 49)

In light of the Court's ruling on Defendants' Motion for Judgment on the Pleadings,

Defendants' Motion for a Stay of Discovery (Doc. 49) is **DENIED AS MOOT.**  The parties are

directed to proceed with discovery with respect to Plaintiff's claim that have survived Defendants'

Motion for Judgment on the Pleadings.

## V.        MOTION TO APPOINT COUNSEL (Doc. 50)

Plaintiff has also filed a motion to appoint counsel.  (Doc. 50).  Because the action has not

yet progressed to the point that the Court is able to evaluate the merits of Plaintiff's claim, the

motion for appointment of counsel is **DENIED** without prejudice to renewal at a later stage of the

proceedings.  *See Henry v. City of Detroit Manpower Dep't*, 763 F.2d 757, 760 (6th Cir. 1985) (en

banc) ("[I]n considering an application for appointment of counsel, district courts should consider

plaintiff's financial resources, the efforts of plaintiff to obtain counsel, and whether plaintiff's claim

appears to have any merit.").

## VI.        MOTION TO STRIKE (Doc. 51)

Plaintiff has requested that the Court strike Defendants' Motion for Judgment on the

Pleadings.  (*See* Doc. 51 at 1–2).  According to Plaintiff, the Court has already screened his

Complaint "and determined that Plaintiff has stated a claim for relief."  (*Id.* at 1).  Therefore, he

argues, Defendants' Motion for Judgment on the Pleadings is moot.  (*Id.* at 2).

Plaintiff misunderstands the significance of this Court's initial screen of his Complaint under 28 U.S.C. §§ 1915(e) and 1915(A). The Court's Order permitting Plaintiff to proceed with this action did not affect Defendants' right to file a Rule 12 motion. Consequently, Plaintiff's Motion to Strike (Doc. 51) is **DENIED**.

## IV.    CONCLUSION

Based upon the foregoing, Defendants' Motion for Judgment on the Pleadings (Doc. 47) is **GRANTED in part and DENIED in part**. Specifically, Defendants' Motion for Judgment on the Pleadings is denied with respect to (1) Plaintiff's deliberate indifference claim against Defendants Grimm, Hitch, and Maria and (2) Plaintiff's First Amendment retaliation claim against Defendant Tyler. Defendant's Motion for Judgment on the Pleadings is granted with respect to all other claims.

However, the Court **GRANTS** Plaintiff 30 days in which to file an Amended Complaint consistent with this Opinion and Order. Plaintiff's Amended Complaint should address the following claims only:

- His deliberate indifference claim against Defendants Grimm, Hitch, and Maria, *see supra* at 7–10;

- His conditions-of-confinement claim against Defendant Brown, Defendant John Doe, Defendant Grimm, Defendant Maria, and Defendant Hitch, *see supra* at 10–14;

- His Fourteenth Amendment Due Process claim based on his confinement in administrative segregation, *see supra* at 15–16; and

- His First Amendment retaliation claim against Defendant Tyler, *see supra* at 18–21.

Plaintiff's Motion to Grant Supplemental Complaint and Serve Defendants (Doc. 44) and Motion to Strike (Doc. 51) are **DENIED**. Plaintiff's Motion to Appoint Counsel (Doc. 50) is **DENIED without prejudice**. Defendants' Motion to Stay Discovery (Doc. 49) is **DENIED as moot**.

IT IS SO ORDERED.

Date:   December 19, 2018                              /s/ Kimberly A. Jolson
                                                       KIMBERLY A. JOLSON
                                                       UNITED STATES MAGISTRATE JUDGE